### JOE RITCHER v. THE STATE.

No. 6822.    Decided February 21, 1923.

**Assault to Rape—Aggravated Assault—Consent—Charge of Court.**

Upon trial of assault to rape, in submitting the issue of aggravated assault, the sole defensive idea presented was that of consent on the part of the prosecutrix. The defendant requested the court to embrace in his charge this affirmative defensive theory, which the court refused, the same was reversible error. Following Shields v. State, 39 Texas Crim. Rep., 413, and other cases.

Appeal from the District Court of Bowie. Tried below before the Honorable P. A. Turner.

Appeal from a conviction of assault to rape; penalty, a fine of $500 and ninety days in the county jail.

The opinion states the case.

*Sid Crumpton* and *Rodgers & Rodgers,* for appellant.—Cited Kearse v. State, 88 S. W. Rep., 363, and cases cited in opinion.

*R. G. Storey,* Assistant Attorney General, for the State.

MORROW, PRESIDING JUDGE.—Tried upon an indictment charging assault with intent to rape, appellant was convicted of aggravated assault; punishment fixed at a fine of five hundred dollars and confinement in the county jail for a period of ninety days.

The subject of the alleged assault was a young lady something over eighteen years of age. She had known the appellant for about a year. He had visited her at her home and had been her escort on various occasions. During the day of the alleged offense, she met appellant at a certain drug store for the purpose of taking an automobile ride with

him. She claims that after getting into the car, she insisted upon going directly to the home of Mr. and Mrs. Taylor, with whom she resided, but that appellant, contrary to her wishes, went to another part of the city near a certain park and there, according to her testimony, the appellant, while sitting in the seat of the automobile, assaulted her. She left the car and went to a nearby house and telephoned for Mrs. Taylor who came for her, and together they went to the home of Mrs. Taylor, where appellant accompanied them, though he rode in his own car. After reaching the home, an interview took place, part of which was in the presence of Mrs. Taylor and part of which was private. In the presence of Mrs. Taylor, appellant apologized for his conduct and stated that he was willing to marry the girl at once. Upon his request for a private interview, he and the prosecutrix went into the bed-room together, where they remained, according to some of the testimony, for about two hours. According to the testimony of the prosecutrix, appellant had made love to her, kissed her and embraced her upon previous occasions, and that on Saturday night preceding the assault, he had indulged in objectionable and indecent familiarity which she resented at the time but subsequently forgave. The place at which the assault took place was a public place and the time was about six o'clock in the evening. There was testimony that on previous occasions the prosecutrix had permitted other young men to kiss her, and that appellant had also done so on various occasions.

According to appellant's testimony, he and the prosecutrix had been associates for some time. He had visited her at the Taylor home and had also escorted her on various occasions. On Saturday night preceding the alleged offense on the Monday following, he paid her a visit, and before leaving, about eleven o'clock at night, he kissed and embraced her a number of times with her consent; also put his hand on her breast, and later upon her privates. She made no objection until the latter occurred, when she slapped him and he went away, assuming that she was angry. On the following day, he telephoned to the home with the view of talking to Mr. Taylor about an engagement they had. The prosecutrix answered the telephone and began a friendly conversation with him, finally inviting him to go on a kodaking trip that afternoon. They went on the kodaking trip in company with Mrs. Taylor. On the following evening, he made an engagement with her over the telephone to meet him for the purpose of taking an automobile ride. She suggested that when she got through work she would meet him at a certain drug store. They entered the automobile together about six o'clock in the evening and rode together without protest upon her part to the place at which the assault is charged to have been made. He there loved her and fondled her, she making no protest until an automobile passed, at which time she said: "We are caught," and got out of the car. She went to a house nearby and he also went there and

later to the home of the prosecutrix, where he had an interview with her in the presence of Mrs. Taylor and offered to marry the girl. He also had a private interview lasting, according to his testimony, about two hours. He denied any effort to force her to submit to intercourse or to force her in any respect to submit to his advances; declared that he had no idea of having intercourse without her consent, and in no event at the public place where the episode occurred. He testified that he believed them acceptable and agreeable to her.

Preliminary to instructing the jury upon the law of assault with intent to rape, the court made a general abstract observation in his charge to the effect that if she consented to his conduct, or if her previous conduct was such as implied consent, that it would not constitute an assault. These are not the words but the substance of the charge.

In submitting the issue of aggravated assault, the sole defensive idea presented was that of *consent* on the part of the prosecutrix. The appellant requested the court to embrace in his charge his affirmative defensive theory, namely, that although she did not consent in terms, her previous conduct had been such as to lead the appellant to believe that his advances were agreeable to her, and that such advances as he made were made under this belief. The special charge embraced a well-settled rule of law in this State, and the court was not warranted in refusing to embody it in his charge to the jury. See Shields v. State, 39 Texas Crim. Rep., 14; Kerr v. State, 88 Texas Crim. Rep., 474, 204 S. W. Rep., 107. The refusal of it was obnoxious to the rule which requires that the defensive theory of one accused of crime, when raised by affirmative testimony, shall be submitted to the jury in an affirmative charge when requested.

Because of the failure to amend his charge or to give to the jury the special charge, the learned trial judge, in our opinion, fell into error of a material nature requiring the reversal of the judgment. It is so ordered.

*Reversed and remanded.*