## JERRY HAYNES v. THE STATE.

### No. 5867.   Decided October 27, 1920.

1.—Murder—Charge of Court—Negligent Homicide of the Second Degree—
    Apparent Danger.

Where, upon trial of murder, the court submitted the issue of negligent homicide of the second degree and required the jury that the evidence must show apparent danger of causing the death of the deceased, and refusing a requested charge omitting the clause in regard to apparent danger, there was no error under Article 1116, Vernon's Penal Code.

2.—Same—Charge of Court—Definition of Negligence.

Upon trial of murder, in which the facts raised the issue of negligent homicide, there was no error in the court's charge defining negligence as the failure to exercise that degree of care and caution which a man of ordinary prudence would use under like circumstances, as this is the statutory definition under such cases and is applicable to negligent homicide of both degrees.

3.—Same—Temporary Insanity—Recent Use of Ardent Spirits.

Under the terms of Article 41, Penal Code, evidence of temporary insanity from the recent use of ardent spirits is receivable only for the purpose of mitigating the penalty, and there was no error in refusing a requested charge that the jury must take into consideration such condition of the defen  ⁱ. and that he could not be held to the same degree of caution as a sober person.

4.—Same—Requested Charge—Main Charge.

Where, the defendant's requested charge to the effect that, if the jury found that he had no intent to shoot or kill deceased, they could in no event convict him of murder, was fully covered by the main charge in the proper manner. there was no error in refusing same, besides the requested charge was improper.

5.—Same—Evidence—Character of Defendant.

There was no error where the State was permitted to ask the defendant as a witness if he did not kill another man and had been indicted for it, to which the court sustained an objection; besides, the witness could be asked if he had not been charged with a felony, in proper form.

6.—Same—Condition of Defendant—Intoxicating Liquor—Charge of Court.

Where, upon trial of murder, the defendant insisted that the evidence showed that when defendant committed the homicide he was in such a condition from the use of liquor as to be crazed, and that he had been struck several blows upon the head, etc., and that he was not responsible for his action; however, the record shows that the trial court submitted this question to the jury, and there was no reversible error in the conviction of murder.

Appeal from the District Court of Upshur.   Tried below before the Honorable J. R. Warren.

Appeal from the conviction of murder; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*Simpson, Lasseter & Gentry,* and *C. E. Florence,* for appellant.—On question of negligent homicide: Robbins v. State, 9 Texas Crim. App., 670; McConnell v. State, 22 id., 354.

On question of intoxicated condition of defendant: Haynes v. State, 204 S. W. Rep., 430.

On question of cross-examination of defendant, as to whether he was charged with felony: Vick v. State, 71 Texas Crim. Rep., 50.

On question of insufficiency of the evidence: Spears v. State, 2 Texas Crim. App., 244; Wooldridge v. State, 146 S. W. Rep., 550.

*Alvin M. Owsley,* Assistant Attorney General, for the State.—On question of recent voluntary use of liquor: Mikeska v. State, 79 Texas Crim. Rep., 109; Burgess v. State, 78 id., 469.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Upshur County, of the murder of one Elias Williams, and his punishment fixed at ten years confinement in the penitentiary This is the second appeal. For our former opinion, see 84 Texas Crim. Rep., 6, 204 S. W. Rep., 430.

Upon the trial of the case, the court submitted the issues of murder and negligent homicide of the second degree. The charge upon the latter phase of the case contains the following:

"Again, upon the issue of negligent homicide of the second degree, I give you this further instruction: If you shall believe from the evidence beyond a reasonable doubt that on or about December 25, 1917, in Upshur County, Texas, the defendant was in the performance of an unlawful act, to wit, rudely displaying a pistol near the private residence of Jim Williams; then if you shall further find and believe that the defendant, in the performance of said unlawful act, if any, and without any apparent intention to kill, did then and there, by negligence, as that term is hereinbefore defined, accidentally discharge said pistol and thereby cause the death of said Elias Williams; then if you further find that there was apparent danger of causing the death of said Elias Williams by so rudely displaying said pistol, if he did, in case you so find you will find the defendant guilty of negligence homicide of the second degree, unless you acquit him under the issue submitted to you herein in Par. 7 and 9."

Appellant excepted to this charge when given, because the same required the jury to believe that there was apparent danger of causing the death of Elias Williams; and in this connection asked special charge No. 5, which is in substance the above, omitting the clause in regard to apparent danger. We uphold the charge as given.

Article 1116, Vernon Penal Code, expressly declares that to be within the definition of negligent homicide of either degree, there must be no apparent intention to kill, and there must be apparent danger and it was proper to so instruct the jury.

There was no error in the court's defining *negligence* as the failure to exercise that degree of care and caution which a man of ordinary prudence would use under like circumstances. This is the statutory definition in such cases. See Art. 1117, Vernon's Penal Code. This statutory definition of negligence is made applicable to negligent homicide of both degrees. See Art. 1122, Vernon's Penal Code. Nothing appears in the evidence in this case to relieve the court from the necessity of charging the statutory definition.

In his fourth and fifth assignments of error, and by exception to the court's charge, appellant raises the question that one intoxicated, or temporarily insane from the recent use of ardent spirits, should not be held to the same degree of caution as a sober person; and complains that the jury were not instructed to take into consideration such condition of the accused in determining the question of his negligence. Neither intoxication nor temporary insanity, produced by the recent voluntary use of intoxicants, excuses crime in this State, and under the terms of Article 41, of our Penal Code, evidence of such temporary insanity is receivable only for the purpose of mitigating the penalty, if any, at the hands of the jury. To hold one intoxicated, to a less degree of caution in the handling of a pistol or other deadly instrument, than is required of a sober person, would be making such condition an excuse for a homicide thus committed.

Appellant asked a special charge to the effect that if the jury found that he had no intent to shoot or kill deceased, they could in no event convict of murder. We think this instruction fully covered by the main charge, wherein the jury were told, following proper definitions, that before they could convict of murder, they must be satisfied beyond a reasonable doubt that appellant acted upon malice aforethought; also, in another part of the main charge, where the jury were told that any person who, in the performance of an unlawful act, but with no intent to kill, by negligence causes the death of another, he was guilty of negligent homicide; also, in several other places in said main charge, where the court repeats the statement as a part of the law of negligent homicide, that same must be a killing without apparent intention to cause death. We further observe that the requested charge was improper, because it was not necessary to constitute murder, that the death of the person killed should have been intended. One may shoot recklessly into a crowd, or a railroad train, or in other ways so act as to manifest an apparent intention to kill, in which event his offence is murder, even though there be no specified intent to cause the death of the party killed.

When appellant was testifying as a witness, he was asked if he did not kill another man and had been indicted for it. Appellant ob-

jected, and asked the court to instruct the jury not to consider this matter, which the court did. However, a bill of exceptions was reserved, which is approved by the trial court with the explanation that he had so instructed the jury. We are unable to see any error in this matter. Appellant denied having been indicted for murder, but seems to have answered without objection that he had been indicted for cutting a man and paid a fine of $187. It is too well settled to permit of discussion that an accused, when a witness, may be asked if he had not been charged with a felony, and the fact that the question when first presented was in the form of asking him if had not killed another negro, which, upon objection, was changed so as to ask him if he had not been indicted therefor, presents no reversible error when the court sustained the objection to the question as first asked, and instructed the jury not to consider same.

It is urgently insisted that the evidence in the instant case showed that when appellant committed this homicide, he was in such a condition, from the use of liquor, as to be crazed, and that he had been struck several blows upon the head, the combined result of both causing his condition to be such as that he ought not to be held responsible for his action. The facts of the unfortunate occurrence seem to show that quite a number of negroes had congregated on Christmas day, and were drinking heavily of whiskey; that there came up a quarrel between appellant and one Burl Williams, and that appellant's brothers undertook to forcibly remove him from the scene, and in their efforts to get him away they knocked him down several times. A little later he appeared at the back door of the house where the negroes were assembled, with a pistol in his hands. There was a general scattering, and appellant proceeded to chase a negro named Elias Williams, and shot him with a pistol, causing his death. There were a number of witnesses for the State and for the appellant, and much swearing *pro* and *con* as to the condition of appellant The trial court told the jury that if appellant was in such condition from the combined effects of the liquor he had taken, and the blows he had received as to render him incapable of knowing that the shooting of Elias Williams was wrong and criminal, or if they believed that he did not know what he was doing at the time, they should acquit him. This issue the jury resolved against the appellant, and we cannot say there is no evidence to support their verdict. Appellant has been twice convicted, and the trial at this time seems to have been in accordance with the suggestions made in the former opinion of this court reversing this case.

We find no reversible error in the record, and the judgment will be affirmed.

*Affirmed.*