John Wayne RUNNELS, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–91–233 CR.

Court of Appeals of Texas,
Beaumont.

June 30, 1993.

Discretionary Review Refused Oct. 20, 1993.

Michael A. McDougal, Conroe, for appellant.

Daniel Rice, Dist. Atty., Michael R. Davis, Asst. Dist. Atty., Conroe, for state.

Before WALKER, C.J., and
BROOKSHIRE and BURGESS, JJ.

## OPINION

BURGESS, Justice.

A jury convicted John Wayne Runnels of murder. The court assessed punishment at forty years' confinement in the Texas Department of Criminal Justice, Institutional Division. Appellant raises three points of error.

Point of error one asserts: "The appellant was denied the effective assistance of counsel guaranteed him through the Sixth and Fourteenth Amendments to the United States Constitution." Point of error two contends: "The appellant was denied the effective assistance of counsel guaranteed him through Article I, Section 10 and 19 of the Texas Constitution." Appellant concedes that the Texas Court of Criminal Appeals has held that the Texas constitutional and statutory provisions did not create a standard in ineffective assistance of counsel cases which is more protective of a defendant's rights than the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Vasquez v. State*, 830 S.W.2d 948 (Tex.Crim.App.1992); *Hernandez v. State*, 726 S.W.2d 53 (Tex.Crim.App.1986). The two points of error shall be addressed together.

■ In reviewing a claim of ineffective assistance of counsel, we must determine whether the trial attorney's representation fell below an objective standard of reasonableness under prevailing professional norms and thus failed to constitute reasonably effective assistance. *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064–2065, 80 L.Ed.2d at 693. If the attorney's performance did fall below the accepted standard, we must determine whether there is a reasonable probability that but for trial counsel's deficient performance the result of the trial would have been different. 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

■ Appellant directs his first complaint to his attorney's performance during jury selection. We find no support in the record for any of appellant's various assertions under this complaint. We have no record that any persons were challenged for cause without stated reason. If the trial court did excuse some jurors who were not challenged by either party during voir dire, it is certainly possible the court was acting within its authority to excuse jurors. TEX.CODE CRIM. PROC.ANN. art. 35.03 § 1 (Vernon 1989); *see Narvaiz v. State*, 840 S.W.2d 415 (Tex.Crim. App.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). Nor do we find trial counsel failed to challenge any juror whom we can affirmatively determine under the record should have been challenged for cause. *Hathorn v. State*, 848 S.W.2d 101, 119 (Tex.Crim.App.1992); *compare Knight v. State*, 839 S.W.2d 505, 510 (Tex.App.—Beaumont 1992, no pet.). We also have no record that trial counsel wasted peremptory challenges on unreachable venirepersons, or that an unacceptable juror served on the jury as a result of the injudicious exercise of peremptory strikes. Although appellant complains the prosecutor misstated the law during voir dire, he has failed to cite any authority suggesting the comments could constitute reversible error if preserved for review, or otherwise enlighten the Court how the result would have been different given an objection to any of the prosecutor's comments. *See Miniel v. State*, 831 S.W.2d 310, 324 (Tex.Crim.App.1992). Appellant has not even suggested that any misstatement of the law by the prosecutor could not be cured by the court's charge to the jury.

■ Appellant next complains counsel was deficient in failing to suppress appellant's written and videotaped confessions. We cannot evaluate appellant's complaints regarding the videotape because appellant did not cause the videotape to be filed with the record on appeal. As for appellant's written confession, appellant does not attack the validity of the confession other than to claim that appel-

lant was not in a coherent, intelligible state when he was apprehended, and that appellant was not brought before a magistrate before being given an opportunity to confess. Appellant admitted he had been using "crystal" in the three days between the murder and his arrest, but we cannot conclude from the evidence at trial that appellant was incapable of making a voluntary statement. We cannot conclude that the confessions were inadmissible. There are any number of reasons why competent and effective counsel might have reached the same decision, not least of which could have been that he realized the effort would be futile. *Hathorn*, 848 S.W.2d at 119. Appellant testified on his own behalf during guilt/innocence, did not deny committing the homicide, but contended that the victim was his best friend and that the victim attacked appellant in a "Viet Nam flashback." It appears trial counsel employed a trial strategy which sought to use the confessions to support both appellant's self-defense theory and the "sudden passion" element of the lesser included offense. Appellant has not overcome the presumption that the challenged action might be acceptable trial strategy. *See Delrio v. State*, 840 S.W.2d 443, 447 (Tex.Crim.App.1992); *Miniel*, 831 S.W.2d at 323.

Appellant next complains that trial counsel failed to object to "utter hearsay concerning extraneous offenses involved in by the Appellant which ... must have affected the jury." The state's theory was that while in a drunken rage appellant beat, repeatedly stabbed the victim, then robbed the corpse for drug money. Appellant's record reference directs the Court to the State's direct examination of a Sheriff's Department detective who testified that he learned from Boo Barnhill that the radio had been removed from the victim's van, that they found a radio at the scene and appellant identified it as the one removed from the van. Appellant presents no case authority in support of the implication that the testimony was inadmissible hearsay, makes no attempt to distinguish TEX.R.CRIM. EVID. 801(e)(2), and does not suggest how the jury might conceivably been influenced by this testimony. This argument shall not be considered by the Court because it has not been adequately briefed. TEX.R.APP.P. 74(f);

*Vuong v. State*, 830 S.W.2d 929, 940 (Tex. Crim.App.), *cert. denied*, —— U.S. ——, 113 S.Ct. 595, 121 L.Ed.2d 533 (1992).

■ Appellant next complains counsel was deficient because he failed to request an instruction on "reasonable doubt." *Geesa v. State*, 820 S.W.2d 154 (Tex.Crim.App.1991), was applied prospectively only and therefore could not have supported error in a case tried in 1989. Of the arguments presented in appellant's brief which are directed at counsel's performance in the guilt phase of the trial, none meet both prongs of the *Strickland* test.

■ Finally appellant argues that trial counsel was deficient in failing to put on evidence in the punishment phase. The standard of review for the punishment phase of a non-capital trial is not that of *Strickland v. Washington*. We analyze effectiveness of counsel during the punishment phase of non-capital offenses under the standard of *Ex parte Duffy*, 607 S.W.2d 507, 514 (Tex.Crim. App.1980). We first determine whether counsel was reasonably likely to render effective assistance, then determine whether counsel reasonably rendered effective assistance. *Craig v. State*, 825 S.W.2d 128, 130 (Tex.Crim.App.1992). Appellant did develop a record in a motion for new trial hearing. There is no record of evidence which counsel had available to him which he failed to present to the court in punishment. Appellant suggests he could have testified in his own behalf to exhibit "some part of his sorrow and remorse." Appellant did testify on his own behalf during trial on guilt or innocence. Appellant did not testify on motion for new hearing that any part of the sorrow and remorse he might feel was not communicated to the court during the course of the trial. Appellant has failed to meet his burden under *Duffy*. Points of error one and two are overruled.

■ Point of error three urges unobjected-to charge error resulted in egregious harm to appellant. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1985) (opinion on rehearing). Appellant argues that the trial court's instruction to the jury concerning credibility of witnesses is an impermissi-

ble comment on the weight of the evidence because "there was only one (1) witness to the act charged against Appellant—the Appellant himself." In *Slaughter v. State,* 809 S.W.2d 949, 952 (Tex.App.—Beaumont 1991, no pet.), we held this exact instruction violated Tex.Code Crim.Proc.Ann. art. 36.14 (Vernon Supp.1993). Appellant must show, in light of the entire jury charge, the state of the evidence, the argument of counsel and the record of the trial as a whole, that the instruction so harmed him that he has not had a fair and impartial trial. *Almanza,* 686 S.W.2d at 171.

■ We disagree with appellant's contention that the charge singled out appellant's testimony. The state called ten witnesses. The victim's sister identified the victim and testified in rebuttal that the victim had never served in Viet Nam. The victim's neighbors testified they heard a fight at the victim's home that night, that the victim's van left the scene around 9:00 p.m., and there were no cars other than the van there that night. They had never seen the victim act violent. Appellant's cousin testified he saw appellant and the victim together around 5:00 that night, that several months before the victim had said he thought appellant stole his shotgun and had threatened appellant. One deputy retrieved the van in Houston. Another investigated the crime scene. Yet another deputy obtained an arrest warrant on appellant, went to Boo Barnhill's house on a tip, obtained consent to search and found the wheels, tires, and radio taken from the van. He later returned to the house with appellant and retrieved the murder weapon, then took appellant's confession. Officer Coyle walked out of his Harris County home in the early morning, found appellant in Coyle's large back yard, asked appellant what he was doing there. Appellant stated that some men were after him because he had murdered someone. He later stated that he had murdered his best friend. Coyle took appellant into custody. Appellant appeared sober. A serologist testified blood found in the van matched the victim. The pathologist who performed the autopsy testified there were numerous abrasions and contusions on the victim's face, there were brush burns on his back, and he had been stabbed eight times in the neck, one wound was a fatal laceration of the jugular vein. The victim had a .377 blood alcohol concentration. At that level the victim's ability to defend himself would have been markedly diminished. These witnesses were effectively cross-examined by defense counsel to highlight the weaknesses and inconsistencies in their testimony.

The defense called four witnesses. Ronnie Hill said the victim threatened appellant that night in connection with the missing shotgun. Brenda Hill, appellant's aunt, also saw the pair that day. The victim was arguing with appellant over missing beer; the beer was actually under the car seat. Appellant's mother testified that she saw the two as well; the victim used profanity and threatened her. She gave him $10 and told him to leave. Appellant went with the victim. Appellant testified in his own behalf. He and the victim were both drunk. Music reminded the victim of Viet Nam. He grabbed appellant by the throat. Appellant panicked and stabbed the victim with a knife he used to pare his fingernails. Appellant dragged the victim outside and stabbed him several more times. He was afraid for his life. He took $3 from the victim's pocket and drove the van to Houston where he hid out with a drug dealer. He gave the van wheels, tires, and radio to the dealer, who gave appellant "crystal" to "calm him down." Appellant admitted he suffered no visible injuries in the fight.

The state did discuss the offending instructions during closing argument and suggested appellant had a bias or motive to testify in a certain manner. The instructions were not highlighted in the charge. They were followed by the same sort of admonishments as found in *Slaughter,* 809 S.W.2d at 954. These paragraphs instructed the jury not to consider statements of counsel as evidence, not to speculate as to possible answers to unanswered questions, not to consider any offered but rejected evidence, and not to speculate upon insinuations in questions. The jury was told that the defendant is presumed innocent, that the burden of proof is always upon the state and never shifts to the defendant, if reasonable doubts exists they must acquit, and the verdict must be unanimous. After reviewing the entire charge, all

of the evidence and argument of counsel, we find that only an unreasonable jury would have focused exclusively on the erroneous portion of the jury instructions to the total disregard of the correctly worded instructions. We hold that error was not so egregious that it deprived appellant of a fair and impartial trial. Point of error three is overruled. The judgment is affirmed.

AFFIRMED.